## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Bryan T. Alfredo, a Special Agent with the Federal Bureau of Investigation, Washington, D.C., being duly sworn, depose and state as follows:

## PURPOSE OF AFFIDAVIT

1. This Affidavit is submitted in support of a Criminal Complaint and Arrest Warrant charging Jorden Robert MINK with violations of 18 U.S.C. §§ 1752(a)(1), (2), (4) and (b)(1)(A); 40 U.S.C. § 5104(d); 40 U.S.C. §§ 5104(e), 5104(e)(2)(D), (F) and (G); 18 U.S.C. § 1361; 18 U.S.C. § 641; and 18 U.S.C. § 2(a), as identified below.

2. I respectfully submit that this Affidavit establishes probable cause to believe that MINK (1) did knowingly enter or remain in any restricted building or grounds without lawful authority, or did knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact impedes or disrupts the orderly conduct of Government business or official functions, and engaged in an act of physical violence against any person and property – and while, during and in relation to these offenses, MINK did use or carry a deadly or dangerous weapon, to wit, a baseball bat, as described below, in violation of 18 U.S.C. §§ 1752(a)(1), (2), (4), and (b)(1)(A) (Unlawful Entry on Restricted Building or Grounds While Using or Carrying a Deadly or Dangerous Weapon); (2) did unlawfully step, climb, remove, or in any way injure a statute, seat, wall, fountain, or other erection or architectural feature, or any tree, shrub, plant or turf, in the Capitol Grounds, in violation of 40 U.S.C. § 5104(d) (Injuries to Property); (3) did willfully and knowingly utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the U.S. Capitol Grounds or in any of the U.S. Capitol Buildings with the intent to impede, disrupt, or

disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress, or parade, demonstrate, or picket in any of the Capitol Buildings, engage in physical violence on the Capitol Building or Grounds, in violation of 40 U.S.C. §§ 5104(e)(2), 5104(e)(2)(D), 5104(e)(2)(F), 5104(e)(2)(G); (4)  did willfully injure or commit any degradation against any property of the United States, or of a department or agency, to wit, windows, the damage or attempted damage to such property exceeding $1,000, in violation of  Title 18 U.S.C. § 1361 (Destruction of Government Property); (5) did unlawfully steal, purloin, or knowingly convert to his use or the use of another, or without authority, conveys or disposes of a thing of value of the United States, or of a department or agency, to wit, a chair and furniture, in violation of 18 U.S.C. § 641 (Theft of Government Property), and (6) did aid and abet the commission of these offenses against the United States, in violation of 18 U.S.C. § 2(a).

## AGENT BACKGROUND

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), Washington Field Office.  As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of Federal criminal laws.

4. I have been employed by the FBI for approximately eight years as a Special Agent since 2016.  During my tenure with the FBI, I have investigated and participated in the investigations of a variety of criminal matters and, among other things, have conducted or participated in surveillances, investigative interviews, the service of Administrative and Grand Jury subpoenas, reviews of records, and the execution of search warrants, involving both physical and electronic evidence.  From these experiences, and from training, I have become familiar with

the ways in which persons use technology to evade and conceal their criminal activity, to include but not limited to, the efforts persons involved in such activity take to disguise operations and avoid detection by law enforcement.

5. Unless otherwise stated, the information in this Affidavit is either personally known to me, has been provided to me by other individuals, or is based on a review of various documents, records, and reports. Because this Affidavit is submitted for the limited purpose of establishing probable cause to support an application for an arrest warrant, it does not contain every fact known by me or the United States. The dates listed in this Affidavit should be read as "on or about" dates.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, the U.S. Attorney's Office for the District of Columbia is investigating this case, which, among other things, involves possible violations of Title 18 U.S.C. § 1752, Restricted Buildings or Grounds; Title 40 U.S.C. § 5104(e)(2)(D), (F), and (G), Unlawful Activities on Capitol Grounds and Disorderly Conduct; Title 18 U.S.C. § 1361, Destruction of Government Property; and Title 18 U.S.C. 641, Theft of Government Property. The conduct at issue includes an overt act in the District of Columbia, in the form of entering a restricted area around the Capitol on January 6, 2021, while armed with a baseball bat, and damaging Capitol property, as part of a mob that disrupted the proceedings of Congress, engaged in property damage and theft, and caused physical injury.

## STATEMENT OF FACTS SUPPORTING PROBABLE CAUSE

*Assault on the U.S. Capitol on January 6, 2021*

7. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

8. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

9. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. Specifically, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Vice President Mike Pence was present and presiding in the Senate chamber.

10. As the proceedings continued in both the House and Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

11. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and the crowd

advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by the U.S. Capitol Police Officers or other authorized security officials.

12. At such time, the joint session was still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, at approximately 2:15 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

13. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 pm after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

14. During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of

violations of local and federal law, including scores of individuals outside and inside the U.S. Capitol building without authority to be there.

*Evidence Linking MINK to Assault on the U.S. Capitol*

15. On January 15, 2021, FBI Pittsburgh Division received a tip that an individual by the name of Jorden MINK was depicted in images that show the unlawful, violent entry into the Capitol building and the destruction and theft of property on the exterior and interior of the building and grounds on January 6, 2021.

16. Upon receiving this information, FBI compared known images of MINK to images and publicly posted videos that show a male matching MINK's description using a baseball bat to shatter a window at the Capitol. Close scrutiny of MINK's tattoos on his neck and fingers are also consistent with images of the individual wielding the baseball bat at the Capitol. The same individual matching MINK's description enters the Capitol building through the broken window and removes property from the interior of the Capitol, to include chairs, delivering it into the hands of people in the crowd on the exterior of the building. Other individuals can be seen handing out property such as a lamp and drawers through the same window after it was shattered by the man matching MINK's description. The man matching MINK's description is also seen striking an adjoining window repeatedly with a baseball bat, in an apparent attempt to shatter it.

17. Below are screenshots of publicly posted videos showing a male matching MINK's description using a baseball bat to shatter a window at the Capitol:



18.     On January 17, 2021, FBI special agents contacted Person 1, a person who has personally known MINK for a period of time, and who has seen him recently.  Person 1 was shown a series of images collected from public sources and social media that depict the man wielding the baseball bat and breaking the window at the Capitol on January 6, 2021.  Person 1 affirmed that the individual in the photos was Jorden MINK.  According to Person 1, MINK made statements affirming his presence at the Capitol and admitting to the destruction of the window with the baseball bat.  Person 1 also accurately identified a photo of the residence of MINK, which FBI knows to be located at ▒▒▒▒▒▒▒▒▒▒ Oakdale, Pennsylvania, and affirmed some of MINK's social media accounts

19.     A review of MINK's social media, including an Instagram account entitled, "tattedup_badison," includes a self-taken photo of MINK at the Lincoln Memorial that is dated January 3, 2021.  An earlier post from what appears to be November 3, 2021, shows a self-taken photo of MINK holding a firearm that has sticker that says, "I Voted."  The commentary to the post reads, "The ballot is stronger than the bullet – Abraham Lincoln.  "Well … my magazines will be fully loaded just in case it's not."   Below are screenshots of these Instagram posts:



20. On January 16, 17, and 18, 2021, FBI special agents affirmed that MINK resides at ▮▮▮▮▮▮▮▮▮▮▮ Oakdale, Pennsylvania, and viewed him at that location.

21. On January 18, 2021, the U.S. Capitol Police assessed that value of the damage caused to the above-described windows exceeds $1,000.

## CONCLUSION

22. Based on the foregoing, your Affiant submits that there is probable cause to believe that Jorden Robert MINK violated 18 U.S.C. §§ 1752(a)(1), (2), (4), and (b)(1)(A) (Unlawful Entry on Restricted Grounds While Armed); 40 U.S.C. § 5104(d) (Injury to Property on Capitol Grounds); 40 U.S.C. §§ 5104(e)(2), 5104(e)(2)(D), (F) and (G) (Violent Entry, Disorderly Conduct, and Physical Violence on Capitol Grounds); 18 U.S.C. § 1361 (Destruction of Government Property); 18 U.S.C. § 641 (Theft of Government Property); and 18 U.S.C. § 2(a) (Aiding and Abetting), as identified and described above.

23. As such, I respectfully request that the court issue an arrest warrant for MINK. The statements above are true and accurate to the best of my knowledge and belief

Respectfully submitted,

_____
BRYAN T. ALFREDO
Special Agent, Federal Bureau of Investigation

Sworn to via telephone after submission by reliable electronic means, Fed. R. Crim. P. 3, 4(d), and 4.1, on this 18th day of January 2021.

2021.01.18 22:10:44 -05'00'
_____
ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE