IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      )          No: 21-CR-25
                                  )
             v.              )          JUDGE MOSS
                                  )
JORDEN MINK                  )

## REPLY TO GOVERNMENT RESPONSE TO MOTION FOR<br>REVOCATION OF DETENTION ORDER

AND NOW COMES, the Defendant, Jorden Mink, by through his counsel, Michael E. Moser, Esquire, filing the within Reply to Government Response to Motion for Revocation of Detention Order, and in support thereof, avers as follows:

**I.    PROCEDURAL HISTORY**

1.    On or about November 9, 2021, Jorden Mink filed a Motion for Revocation of Detention Order

2.    On or about November 23, 2021, the Government filed a response to Mr. Mink's Motion for Revocation of Detention Order.

**II.    STANDARD OF REVIEW**

3.    A motion under 18 U.S.C. § 3145(b) for review of a magistrate judge's detention order requires the Court promptly to examine de novo whether there are conditions of release that will reasonably assure the safety of any other person and the community. The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons. (internal citations omitted) *U.S. v. Sheffield*, 799 F. Supp. 2d 18, 19-20 (D.D.C. 2011)

### III.   REPLY TO GOVERNMENT RESPONSE TO MOTION FOR REVOCATION OF DETENTION ORDER

4.      The Government's Response to Mr. Mink's Motion for Revocation of Detention Order (hereinafter "The Government's Response" asserts that it has been proven by clear and convincing evidence that Mr. Mink is a danger to the community and that no combination of conditions of release would reasonable assure the safety of the community.

5.      The Government's Response notes that Mr. Mink's alleged conduct on January 6, 2021 involved use of a flagpole, a traffic cone, and a step or a drawer.

6.      The Government's Response concedes by omission that Mr. Mink's alleged conduct on January 6, 2021 did not result in injury to any person, nor did it involve firearms, knives, or explosive devices of any kind.

7.      Nonetheless, the Government's Response spends three pages discussing firearms that were legally owned and acquired by Mr. Mink and were never used, brandished, displayed or employed in any manner at any time by Mr. Mink on January 6, 2021, after January 6, 2021, or before January 6, 2021.

8.      Mr. Mink was not at any time prior to his arrest in this case prohibited from ownership of a firearm.

9.      The Government's Response sets forth no evidence or assertions that Mr. Mink was, is, or has been a part of any group or organization alleged to have been involved with the planning or execution of the January 6, 2021 events at the Capitol Building.

10.      The Government's Response sets forth no evidence that Mr. Mink traveled with any other persons to the Washington D.C. on January 6, 2021.

11.     The Government's Response notes that on January 18, 2021, the same day that the Criminal Complaint was filed against him in the Western District of Pennsylvania, Jorden Mink was arrested in Pittsburgh, Pennsylvania "away from his residence".

12.     While it is true that Mr. Mink was not arrested at his residence, it is also true that Mr. Mink was arrested outside of the storage unit/music studio that was rented in his name; and that Mr. Mink, upon learning that law enforcement officers were at his home, indicated to his girlfriend that he was going to come home from his storage unit music studio immediately, at which time he was taken into custody at the storage unit music studio without incident. (Transcript pp.15-16, 52)

13.     It is clear that in the days leading up to January 18, 2021, despite his awareness that he was probably under investigation, Mr. Mink remained in Allegheny County and spent his time at his place of employment, his music studio, at a doctor appointment, and at his home. (Transcript pp.15-17, 32-34, 49-53)

14.     The Government's Response suggests that Mr. Mink obstructed or impeded an investigation because he did not seek out FBI personnel.  To the contrary, Mr. Mink stayed local and made no efforts to flee or hide despite his knowledge that he may have been the subject of an investigation, and was fully cooperative with law enforcement at the time of his arrest.

15.     The Government's Response suggests that Mr. Mink obstructed or impeded an investigation because he did not possess, at the time of his arrest, a cellular phone that law enforcement believes he possessed on January 6, 2021.

16.     The Government's Response presents no evidence that there is any nefarious reason that Mr. Mink did not possess the red phone, that Mr. Mink was obligated to surrender or

preserve any telephone or any other devices.

17.     Mr. Mink's behavior following January 6, 2021 until his January 18, 2021 arrest was appropriate and lawful.  The Government asserts that Mr. Mink's alleged failure to maintain possession of a cellular phone or seek out FBI agents was improper, or even obstruction of justice.

18.     To the contrary, Mr. Mink exercised his constitutional rights to choose not to seek out law enforcement, and despite his freedom at the time to go anywhere he wanted to go, he chose to remain local and made no efforts to flee or hide despite his knowledge that he may have been the subject of an investigation.

19.     Mr. Mink's post January 6, 2021 and pre-arrest conduct was appropriate and lawful.

20.     Mr. Mink, between January 6, 2021 and January 18, 2021, was under no legal obligation to preserve or maintain possession of any of his belongings for law enforcement to examine, especially when law enforcement had made no efforts to contact or speak with Mr. Mink between January 6, 2021 and January 18, 2021.

21.     Mr. Mink's instance of non-appearance was in 2012 when Mr. Mink was mistaken about his about his court date and failed to appear.  Once he became aware that he had missed a court date, Mr. Mink immediately turned himself in, and his case was resolved as summary citation level offenses within days of his self surrender.  This instance from 9 years ago does not demonstrate "complete disregard" for the rule of law.

22.     The Government's Response attacks Mr. Mink's character because he had been

unemployed for three months prior to his arrest, while failing to note that Mr. Mink worked as a

landscaping business as a landscaper and was laid off in November of 2020 because landscaping

is a seasonal job.  Additionally, it should be noted that Mr. Mink worked at his landscaping job

even after being involved in a bad ATV accident.

23.     There was nothing unlawful about Mr. Mink's attempt to purchase a firearm on

January 9, 2021, where he was not prohibited from doing so.  Mr. Mink's alleged conduct on

January 6, 2021 does not involve firearms, nor does any criminal act that he has ever been

charged with or convicted of.  The Government's constant reference to guns is not relevant to the

charges in this case or to the issue of detention where there is zero evidence that Mr. Mink has

ever committed any criminal offense involving a firearm.

27.     Despite Mr. Mink's Instagram post in which he held a legally owned gun and

quoted Abraham Lincoln, Mr. Mink's alleged conduct on January 6, 2021 does not involve

firearms and the existence of this cherry picked social media post does not warrant detention,

establish danger, or preclude release with conditions.[1]

28.     Mr. Mink's sobriety since December 2019 is admirable and weighs in favor of

release.

29.     Mr. Mink has a stable and loving family, a loving fiancé, and an eight year old son

for whom he is the primary support.

30.     Mr. Mink has a consistent history of employment and has employment available

---

[1] At detention hearing, the defense exhibits included a broad sampling of Mr. Mink's
social media posts, which primarily focused on sobriety, family, suicide prevention, and music,
rather than politics.  Defendant will make these Exhibits available to the Court at the time of a
hearing on this Motion or at any other time.

to him if released.

31.     Despite the Government's assertion that Mr. Mink has demonstrated "complete disregard for the law" Mr. Mink, in his criminal history and lifetime, has no history or instance of being uncooperative with law enforcement in any way.

32.     This Honorable Court is well aware of the challenges faced by Mr. Mink to date in being able to access and review his Rule 16 discovery materials.

33.     Central Treatment Facility has limited number of laptop computers for use by inmates to review their discovery materials.

34,     On October 20, 2021 produced very large supplemental production of discovery by the Government via a file sharing platform.

35.     This supplemental production contains multiple terabytes of data including thousands of hours of video footage of the January 6, 2021 events at the United States Capitol.

36.     Counsel will be unable to review thousands of hours of video footage and will certainly be unable to provide any meaningful access to those discovery materials to Mr. Mink.

37.     If Mr. Mink was released on conditions set by this Honorable Court, he would be able to have meaningful access to and ability to review the Rule 16 materials provided to date by the Government.

38.     The deplorable conditions at Central Treatment Facility as well and discovery review issues warrant consideration by the Court.

39.     While detained at Central Detention Facility, Mr. Mink has endured multiple instances of being served "food" that is inedible, rotten, or both.  The inedible foods that he has been served include rotten fruit, and food substance that tastes and smells like detergent.

40.     Even when the food is not technically inedible or rotten, it is not uncommon for Mr. Mink to be served medieval style prison meals consisting of only bread and cheese, or only "sweat meat" with no bread.

41.     While detained at Central Detention Facility Mr. Mink has been exposed to black mold on multiple occasions.

42.     While detained at Central Detention Facility, Mr. Mink has not been able to access any manner of in-person or video visitations with his family.

43.     Mr. Mink was recently subjected to tear gas as the result of guards using that substance against other inmates.[2]

WHEREFORE, in light of all of the foregoing, the Defendant, Jorden Mink, respectfully requests that this Honorable Court grant the within Motion and enter an Order vacating Magistrate Judge Lenihan's January 29, 2021 order of detention.

                                              Respectfully submitted,

Dated: November 30, 2021            /s/ Michael E. Moser _____
                                              Michael E. Moser, Esquire
                                              PA ID No. 78844
                                              Law Office of Michael Moser
                                              2661 Clearview Road - Suite 8
                                              Allison Park, Pennsylvania 15101
                                              (412) 753 0400
                                              mike@moserslaw.com
                                              memoser@comcast.net

---

[2] Mr. Mink welcomes the opportunity to advise the Court more extensively of conditions at Central Treatment Facility at a hearing on his motion.

-7-