**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA, |
| v. |
| JORDEN ROBERT MINK, |
| *Defendant.* |

Criminal Action No. 21-25 (RDM)

## ORDER

Pending before the Court is Defendant's motion to revoke his pretrial detention. Dkt. 37. The government opposes the motion. Dkt. 40. For the following reasons, the Court will **DENY** the motion.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, sets forth the limited exceptions to this rule. Under the Bail Reform Act, if a judicial officer finds that the defendant is charged with a covered offense and that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e)(1). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). Here, Defendant is charged with multiple covered offenses, *see* 18 U.S.C. § 3142(f)(1)(A), (E); *id.* § 3156(a)(4) (defining "crime of violence"); *United States v. Klein*, 533 F. Supp. 3d 1, 8–9 (D.D.C. 2021); *see*

*also* Dkt. 7 at 3–5, and Defendant does not pose a serious risk of flight. Accordingly, the sole question before the Court is whether any conditions will reasonably ensure the safety of the community.

To detain a defendant based on dangerousness, the judicial officer must consider four statutory factors: (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the [defendant];" (3) "the history and characteristics of the [defendant];" and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g)(1)–(4). The government bears the burden of showing by "clear and convincing evidence" that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." *Id.* § 3142(f).

Here, the magistrate judge before whom Defendant initially appeared ordered that he be detained pending trial on the ground that "no condition or combination of conditions of release will reasonably assure the safety" of the community. Dkt. 40-1 at 2. A defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment to the order" with "a court having original jurisdiction over the offense." 18 U.S.C. § 3145(b). The magistrate's detention order is subject to de novo review by the district court. *United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018); *see also Munchel*, 991 F.3d at 1279. Defendant's motion asks the Court to revoke the magistrate judge's detention order and to impose conditions that will reasonably assure the safety of the community. Dkt. 37 at 15. As explained below, the Court concludes that the factors set forth in 18 U.S.C. § 3142(g) weigh in favor of Defendant's continued pretrial detention.

The first factor, the nature and circumstances of the offense, weighs in favor of detention. Defendant is charged with committing ten crimes, including multiple violent felonies, while participating in the violent attack on the U.S. Capitol that occurred on January 6, 2021. Dkt.7. The government alleges that Defendant "violently and repeatedly" struck the windows of the U.S. Capitol Building with a baseball bat until they shattered, Dkt. 40 at 3–4; that he "hurl[ed] multiple objects" at a group of Capitol Police officers, *id.* at 5; and that he used a "long pole" to "violently and repeatedly strike the officers at the entrance [to the Capitol Building], hitting their shields at least five times," *id.* In light of these allegations, Defendant is charged with, among other things, "using a deadly or dangerous weapon" to "forcibly assault, impede, intimidate, and interfere with[] an officer and employee of the United States," Dkt. 7 at 4, and "forcibly assault[ing], resist[ing], oppos[ing], intimidat[ing], and interfer[ing] with[] an officer and employee of the United States . . . where the acts . . . involve[d] physical contact with the victim and the intent to commit another felony," *id.* at 5. Those alleged offenses are violent crimes that threaten the safety of the community. Simply put, "if any crime establishes danger to the community and a disregard for the rule of law, assaulting a riot-gear-clad police officer does." *United States v. Fairlamb*, --- F. Supp. 3d ---, 2021 WL 1614821, at *5 (D.D.C. 2021); *see also Mnuchel*, 991 F.3d at 1284 ("[T]hose who actually assaulted police officers and broke through windows, doors, and barricades . . . are in a different category of dangerousness than those who cheered on the violence.").

The second factor, the weight of the evidence, also weighs in favor of detention. The government has obtained, and the Court has reviewed, video recordings reflecting some of Defendant's conduct at the U.S. Capitol on January 6, 2021. The videos are striking in their display of Defendant's violent and fervent participation in advancing the mob's breach of the

3

Capitol Building, including his successful efforts to shatter two large windows with a baseball bat, which enabled rioters to bypass law enforcement and to enter the building. In one video, Defendant appears to be standing outside of an entrance to the Capitol, where a group of police officers in riot gear is under assault by the mob. Defendant pushes his way to the front of the crowd and hurls objects—which appear to include a traffic cone, a large rectangular-shaped object, and a pole—at the officers from close range. Unsatisfied, Defendant descends back into the crowd, finds more objects, and again violently throws them at the police officers, who are under siege. Finally, Defendant reappears with what appears to be a flag pole, again pushes up to the front line, and repeatedly—and savagely—strikes at the officers, who raise their shields to meet his intense blows. This evidence is substantial and disturbing, and it strongly supports the government's view that Defendant would pose a threat to the community if released.

The third factor, the history and characteristics of the defendant, also supports continued detention, albeit less clearly than the other factors. Defendant's criminal record includes two convictions for disorderly conduct, two convictions for driving under the influence, one conviction for simple assault, and one conviction for trespass. Dkt. 37 at 12. To be sure, Defendant has never been convicted of a felony—all six of his prior convictions were for "misdemeanor and citation level offenses." *Id.* at 11. But the nature of Defendant's record at least suggests that Defendant has a penchant for disregarding the law. That conclusion is buttressed by evidence that Defendant was "aware that [he] was wanted by the FBI" shortly after January 6, but his cell phone "mysteriously disappeared" between January 6 and his arrest on January 18, 2021. *Id.* at 17, 86.

The fourth and final factor, danger to individuals or the community, weighs in favor of detention. "Consideration of this factor encompasses much of the analysis set forth above, but it

4

is broader in scope." *United States v. Taylor*, 289 F. Supp. 3d 55, 70 (D.D.C. 2018). As discussed, the violent nature of Defendant's acts on January 6 and his criminal history demonstrate that he would pose a danger to the community if released. In addition, the government highlights that (1) Defendant posted a threatening statement on Instagram—"the ballot is stronger than the bullet . . . . Well, my magazines will be fully loaded just in case it's not!"— alongside a photo of himself with an AR-15-style rifle just before Election Day, Dkt. 40 at 8; (2) Defendant was arrested with a loaded handgun and the FBI found two loaded magazines in his car, *id.* at 17; and (3) the FBI "never recovered" the AR-15 style rifle pictured in Defendant's Instagram post, *id.* at 19. In response, Defendant argues that his Instagram post does not establish any risk of danger because Defendant's conduct on January 6 "[did] not involve firearms." Dkt. 43 at 5. To be sure, if Defendant had brought a gun to the attack on the Capitol, it is possible that events would have taken an even more tragic turn than they did. But Defendant's post suggesting that he was prepared to use an assault-style rifle if unsuccessful at the ballot box remains chilling given Defendant's sustained, violent assault on the police officers who were protecting the Capitol on January 6, 2021.

Given Defendant's history and repeated violent assaults on law enforcement officers who were merely attempting to protect the U.S. Capitol and its occupants from attack, the Court further concludes that no conditions of pretrial release will reasonably ensure the safety of the community, including the pretrial services officers who would be required to enforce any such conditions.

In considering the four factors together, therefore, Court concludes that no condition or combination of conditions of release could reasonably assure the safety of the community.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's motion to revoke his pretrial detention, Dkt. 37, is **DENIED**.

**SO ORDERED**.

_____
RANDOLPH D. MOSS
United States District Judge

Date:  December 13, 2021