**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 21-CR-25** |
| | : | |
| **JORDEN ROBERT MINK,** | : | |
| | : | |
| **Defendant.** | : | |

**STATUS REPORT AND GOVERNMENT'S UNOPPOSED MOTION**
**TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

On February 4, 2022, a status hearing was held in this matter, at which time the Court instructed the parties to submit a written status report to the Court by March 18, 2022, providing an update on the status of the case and addressing the tolling of the Speedy Trial Act.   The Court also made a finding that the ends of justice warranted a tolling of the Speedy Trial Act through March 18, 2022.   Hence, the United States of America, through undersigned counsel, and the defendant, through counsel Komron Jon Maknoon, Esquire, submit the following status report, and request that the matter be continued for 60 days for a further status report, or in the alternative, a status hearing.[1]   The government further moves this Court without objection to exclude the time within which the trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*., on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv).   In support of its motion, the government states as follows:

---

[1]       In the interest of judicial economy, it is the preference of the parties that the matter be set for a further status report, rather than a status hearing.   In the event it becomes necessary to raise a matter with the Court before the status report due date, the parties will file a motion accordingly.

## FACTUAL BACKGROUND/STATUS OF CASE

Defendant is charged via indictment with offenses related to crimes that occurred at the United States Capitol on January 6, 2021.   In brief, on that date, as a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election, members of a large crowd that had gathered outside forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. Scores of individuals entered the U.S. Capitol without authority to be there.   As a result, the Joint Session and the entire official proceeding of the Congress was halted until the Capitol Police, the Metropolitan Police Department, and other law enforcement agencies from the city and surrounding region were able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.   This event in its entirety is hereinafter referred to as the "Capitol Attack."

The investigation and prosecution of the Capitol Attack will likely be one of the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence.   Over 700 individuals have been charged in connection with the Capitol Attack. The investigation continues and the government expects that additional individuals will be charged.   While most of the cases have been brought against individual defendants, the government is also investigating conspiratorial activity that occurred prior to and on January 6, 2021.   The spectrum of crimes charged and under investigation in connection with the Capitol Attack includes (but is not limited to) trespass, engaging in disruptive or violent conduct in the Capitol or on Capitol grounds, destruction of government property, theft of government property,

2

assaults on federal and local police officers, firearms offenses, civil disorder, obstruction of an official proceeding, possession and use of destructive devices, and conspiracy.

Defendants charged and under investigation come from throughout the United States, and a combined total of over 900 search warrants have been executed in almost all fifty states and the District of Columbia.   Multiple law enforcement agencies were involved in the response to the Capitol Attack, which included officers and agents from U.S. Capitol Police, the District of Columbia Metropolitan Police Department, the Federal Bureau of Investigation, the Department of Homeland Security, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the United States Secret Service, the United States Park Police, the Virginia State Police, the Arlington County Police Department, the Prince William County Police Department, the Maryland State Police, the Montgomery County Police Department, the Prince George's County Police Department, and the New Jersey State Police.   Documents and evidence accumulated in the Capitol Attack investigation thus far include: (a) more than 15,000 hours of surveillance and body-worn camera footage from multiple law enforcement agencies; (b) approximately 1,600 electronic devices; (c) the results of hundreds of searches of electronic communication providers; (d) over 210,000 tips, of which a substantial portion include video, photo and social media; and (e) over 80,000 reports and 93,000 attachments related to law enforcement interviews of suspects and witnesses and other investigative steps.   As the Capitol Attack investigation is still on-going, the number of defendants charged and the volume of potentially discoverable materials will only continue to grow.   In short, even in cases involving a single defendant, the volume of discoverable materials is likely to be significant.

In this case, the defendant is charged with, among other things, Obstruction of an Official

Proceeding, in violation of 18 U.S.C. § 1512(c)(2); Destruction of Government Property, in violation of 18 U.S.C. § 1361; Theft of Government Property, in violation of 18 U.S.C. § 641; Entering and Remaining in a Restricted Building or Grounds with a Deadly Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A); Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); and Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b).   The government has provided the following discovery:

- On May 4, 2021, the government provided the defense with the discovery items most directly relevant to the defendant, including, but not limited to, approximately 300 items of discovery, including: FBI reports; search warrant materials; videos; photographs; social media records; and a grand jury transcript.

- On September 1, 2021, the government provided the defense with supplemental discovery, which included videos of the defendant on the U.S. Capitol grounds on January 6, 2021, engaging in the alleged criminal conduct.

- On October 20, 2021, the government provided the defense with four voluminous global discovery productions (global productions #1-4), which consisted of information concerning the Capitol Attack in general, including, but not limited to: U.S. Capitol Police (USCP) files from its Office of Responsibility; internal investigative reports from the Metropolitan Police Department (MPD); maps of the Capitol interior; USCP radio communications as well as draft transcripts of these radio communications; and access to more than 16,000 files containing USCP Closed Circuit Video (CCV) and 1,700 files containing MPD Body Worn Camera (BWC) footage of the Capitol Attack.

- On January 25, 2022, Mr. Maknoon formally entered his appearance in the case, replacing

4

previous counsel (ECF 48).

- On January 27, 2022, the government made the previous discovery available to Mr. Maknoon via USAfx, and provided the defense with six voluminous global discovery productions (global productions #5-10), which also consisted of information concerning the Capitol Attack in general, including, but not limited to: maps; a detailed timeline of the Capitol Attack; additional USCP CCV footage; BWC video footage from MPD, the Fairfax County Police Department, and the Montgomery County Police Departments; a summary and an index of the BWC video footage; U.S. Secret Service (USSS) video surveillance from exterior cameras; FBI interviews of law enforcement officer who were present at the Capitol Attack; USCP after-action reports and use-of force reports; radio transmissions and transcripts from MPD; files from MPD's Electronic Surveillance Unit; and radio communications and related reports from the Virginia State Police.

- On February 3, 2022, the government provided the defense counsel with an additional global discovery production (global production #11), which included, but was not limited to: USCP materials (including radio communications and redacted transcripts); more than 18,000 files of anonymous tips and related documentation made to MPD; files related to interstate commerce; USSS files related to the security of Vice President Pence; three FBI reports of interview interviews; a government-created spreadsheet to aid in the review of pole camera video from the Arlington County Police Department (ACPD); and 104 files of approximately 102 hours of BWC and pole camera footage from approximately 54 ACPD officers.

- On March 2, 2022, the government provided the defense with supplemental discovery,

consisting of a report of data obtained from the defendant's phone, which was recovered at the time of arrest, and containing, among other things, multiple relevant text messages sent and/or received by the defendant in early 2021.

- On March 4, 2022, the government provided the defense with an additional voluminous global discovery production (global production #12), which included, but was not limited to: more than 250 FBI interviews; multiple search warrants and related material pertaining to the investigation into the Capitol Attack; and documents associated with Capitol Riot defendant Guy Reffit (who was recently convicted after trial in the U.S. District Court for the District of Columbia for participating in the Capitol Attack.

The United States is aware of and takes seriously its obligations pursuant to Federal Rule of Criminal Procedure 16 and Local Criminal Rule 5.1(a), the provisions of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), and the Jencks Act, 18 U.S.C. § 3500.   It is, therefore, conducting a case-specific scrub of evidence collected during Capitol Attack investigation, including USCP CCV and BWC video footage.   The government expects that this search and any results therefrom will further inform on the defendant's actions while on the capitol grounds.

The defense (to include newly appointed defense counsel) is currently reviewing the voluminous discovery in this case.   Once the review of the discovery material is completed, the defendant will need sufficient time to discuss with his attorney the evidence in the case as well as any possible disposition options.   Accordingly, the parties are requesting that the matter be continued for 60 days for a further status report, or in the alternative, a status hearing.

## SPEEDY TRIAL ARGUMENT

Pursuant to the Speedy Trial Act, as a general matter, in any case in which a plea of not guilty is entered, a defendant charged in an indictment with the commission of an offense must commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.   18 U.S.C. § 3161(c)(1).

Section 3161(h) of the Speedy Trial Act sets forth certain periods of delay which the Court must exclude from the computation of time within which atrial must commence.   As is relevant to this motion for a continuance, pursuant to subsection (h)(7)(A), the Court must exclude:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A).   This provision further requires the Court to set forth its reasons for finding that that any ends-of-justice continuance is warranted.   *Id.*   Subsection (h)(7)(B) sets forth a non-exhaustive list factors that the Court must consider in determining whether to grant an ends-of-justice continuance, including:

> (i)   Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

> (ii)   Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
> . . .

> (iv)   Whether the failure to grant such a continuance in a case which, taken as a

7

> whole, is not so unusual or so complex as to fall within clause (ii), would
> deny the defendant reasonable time to obtain counsel, would unreasonably
> deny the defendant or the Government continuity of counsel, or would
> deny counsel for the defendant or the attorney for the Government the
> reasonable time necessary for effective preparation, taking into account
> the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv).    Importantly, "[i]n setting forth the statutory factors that justify a continuance under subsection (h)(7), Congress twice recognized the importance of adequate pretrial preparation time." *Bloate v. United States*, 559 U.S. 196, 197 (2010) (*citing* §3161(h)(7)(B)(ii), (B)(iv)).

An interests of justice finding is within the discretion of the Court.    *See, e.g., United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985); *United States v. Hernandez*, 862 F.2d 17, 24 n.3 (2d Cir. 1988). "The substantive balancing underlying the decision to grant such a continuance is entrusted to the district court's sound discretion." *United States v. Rice*, 746 F.3d 1074 (D.C. Cir. 2014).

In this case, an ends-of-justice continuance is warranted under 18 U.S.C. § 3161(h)(7)(A) based on the factors described in 18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv).    As described above, the defendant needs additional time to conduct a meaningful review of the discovery as well as to consider potential disposition options.    In addition, the Capitol Attack is likely the most complex investigation ever prosecuted by the Department of Justice.    Developing a system for storing and searching, producing and/or making available voluminous materials accumulated across hundreds of investigations, and ensuring that such system will be workable for both the government and defense, will continue take time.    Further adding to production and review times, certain sensitive materials may require redaction or restrictions on dissemination, and other materials may need to be filtered for potentially privileged information before they can be reviewed by the prosecution.

8

The need for reasonable time to organize, produce, and review voluminous discovery is among multiple pretrial preparation grounds that Courts of Appeals have routinely held sufficient to grant continuances and exclude the time under the Speedy Trial Act.   *See, e.g., United States v. Bikundi*, 926 F.3d 761, 777-78 (D.C. Cir. 2019) (Upholding ends-of-justice continuances totaling 18 months in two co-defendant health care fraud and money laundering conspiracy case, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery"); *United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019)(Upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (District court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013)(Upholding ends-of-justice continuance of ten months and twenty-four days in case involving violation of federal securities laws, where discovery included "documents detailing the hundreds financial transactions that formed the basis for the charges" and "hundreds and thousands of documents that needs to be catalogued and separated, so that the parties could identify the relevant ones")(internal quotation marks omitted); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010)(Upholding ninety-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's case was joined with several co-defendants, and there were

on-going investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries); *United States v. O'Connor*, 656 F.3d 630, 640 (7th Cir. 2011)(Upholding ends-of-justice continuances totaling five months and twenty days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules").

In sum, due to the number of individuals currently charged across the Capitol Attack investigation and the nature of those charges, the on-going investigation of many other individuals, the volume and nature of potentially discoverable materials, and the reasonable time necessary for effective preparation by all parties taking into account the exercise of due diligence, the failure to grant such a continuance in this proceeding would be likely to make a continuation of this proceeding impossible, or result in a miscarriage of justice.   Accordingly, the ends of justice served by granting a request for a continuance outweigh the best interest of the public and the defendant in a speedy trial.

Government counsel notified counsel for the defense of the filing of this status report and motion to exclude time under the Speedy Trial Act, and he consents to its filing.

WHEREFORE, the parties respectfully request that this Court continue this matter for 60 days for a further status report or, in the alternative, a status hearing, and that the government further requests without objection that the Court exclude the time within which the trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*., on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052


By:      _____/s/_____
        Michael C. DiLorenzo
        Assistant United States Attorney
        Bar No. MD 931214 0189
        555 Fourth Street, N.W., Room11-858
        Washington, DC   20530
        michael.dilorenzo@usdoj.gov
        (202) 252-7809